**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

GUILHERME B.V.,                             :
                                            :
                  Petitioner,               :          Civ. No. 20-11734 (KM)
                                            :
         v.                                 :
                                            :
JOHN TSOUKARIS, *et al.*,                   :          **OPINION**
                                            :
                  Respondents.              :

---

**KEVIN MCNULTY, U.S.D.J.**

## I.   INTRODUCTION

Petitioner, Guilherme B.V.,[1] is an immigration detainee currently held at Essex County Correctional Facility ("ECCF"), in Newark, New Jersey. By Opinion and Order dated September 14, 2020, I denied his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, as well as his Motion for a Temporary Restraining Order ("TRO"). (DE 16; DE 17.) Presently before the Court is Petitioner's Motion for Relief from Judgment under Fed. R. Civ. P. 60(b). (DE 18.) Respondents oppose the motion. (DE 27.) Pursuant to Local Civil Rule 78.1, this matter is decided without oral argument. For the reasons set forth below, the motion is denied.

## II.   BACKGROUND

I incorporate by reference the background provided in my September 14, 2020 Opinion in this matter. (DE 16.) I recite, however, a few pertinent facts, as well as changes that have occurred since that decision was issued.

---

[1] Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

Petitioner is a 38-year-old native and citizen of Brazil. (DE 9-7 at 1.) He suffers from Chronic Obstructive Pulmonary Disease ("COPD"), moderate asthma, and obesity. (DE 16 at 3–5.) These medical conditions have been recognized by the Centers for Disease Control and Prevention ("CDC") as either placing an individual at increased risk for severe illness from COVID-19, or potentially placing them at increased risk. *See* Ctrs. for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 31, 2020).

Petitioner is subject to a final order of removal and is detained pursuant to Immigration and Customs Enforcement's ("ICE") mandatory authority under 8 U.S.C. § 1231(a)(6). (DE 27 at 1.) He has been released on bond twice by an Immigration Judge, but on both occasions, he was re-detained after being arrested for a new criminal offense. (DE 9-7 at 3; DE 9-10 at 4.) Since May 2020, Petitioner has failed to comply with the Government's efforts to deport him. (DE 27 at 5; DE 27-1 at 4–6.) On numerous occasions, he has refused to help the Government obtain travel documents necessary to effectuate his removal. (DE 27-1 at 4–5.) As recently as November 10, 2020, Petitioner expressly informed the Consulate of Brazil that he will refuse to sign any travel documents that are issued for him. (*Id.* at 5.) As a result, Petitioner has been issued several Notices of Failure to Comply pursuant to 8 C.F.R. § 241.4(g) and has remained in ICE custody. (*Id.*)

Petitioner is detained at ECCF. Since the Court's prior Opinion, there have been several changes in COVID-19 protocols at the facility, as well as a change in the number of confirmed COVID-19 cases. (*Compare* DE 9-5, *with* DE 27-2.) The most recent declaration from Alfaro Ortiz, Director of ECCF, states that "it has not been possible to prevent 100% of individuals who have contracted COID-19 from entering the facility." (DE 27-2 at 19.) Director Ortiz believes that COVID-19 was introduced to the facility through asymptomatic individuals who entered the

facility after going home to the greater community, which is experiencing an increase in COVID-19 cases. (*Id.*) To address this concern, the facility instituted regular COVID-19 testing for anyone who works in the facility, including vendors, at the beginning of December. (*Id.* at 19–20.) ECCF plans to test these individuals every two weeks through at least February 2021. (*Id.* at 20.) Additionally, the facility is screening new admissions, performing antibody testing on them, and placing all new inmates and detainees in a 14-day quarantine before they are released into the general population. (*Id.* at 19.) Since the beginning of November 2020, ECCF has provided all inmates and detainees with surgical masks. (*Id.*) Inmates and detainees can obtain new replacement masks upon request. (*Id.*)

Director Ortiz confirms there has been a recent increase in the number of confirmed COVID-19 cases among ICE detainees, county inmates, and correctional staff. (*Id.* at 35.) On December 6, 2020, an ICE detainee in Dorm 2 tested positive for COVID-19 and on December 14, 2020, an ICE detainee in Dorm 4 also tested positive. (*Id.* at 38.)[2] On both occasions, the facility conducted rapid polymerase chain reaction ("PCR") testing of both housing units to determine whether any other detainees had been infected. (*Id.* at 38–39.) Nine additional detainees tested positive. (*Id.*) Those who tested positive were placed in medical isolation in single-occupancy cells. (*Id.*) As a precaution, the remainder of the Dorm 2 and Dorm 4 residents were placed in a 14-day quarantine and monitored daily. (*Id.*) No new detainees are allowed into or out of these units unless necessary and unless they take precautions such as wearing an N-95 mask. (*Id.*)

On August 27, 2020, Petitioner filed a habeas petition and motion for a TRO seeking his immediate release from detention based upon his health conditions and the conditions of

---

[2]    Petitioner is housed in Dorm 4 where one of the outbreaks occurred. (DE 27 at 7.) He was subsequently tested for COVID-19 and his results came back as negative. (*Id.*)

confinement at ECCF during the COVID-19 pandemic. (DE 1; DE 2.) I denied both petition and motion. (DE 16; DE 17.) Petitioner now seeks relief from that judgment pursuant to Federal Rule of Civil Procedure 60(b). (DE 18.) He submits that the outbreak of COVID-19 at ECCF since the Court's prior decision warrants relief from that judgment, and he requests his immediate release. (DE 18-1.) Respondents have filed opposition to the motion and Petitioner has filed a reply. (DE 27; DE 29.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides the grounds for which a Court may grant a party relief from a final judgment. These grounds include: (1) "mistake, inadvertence, surprise, or excusable neglect;" (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);" (3) "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;" (4) "the judgment is void;" (5) "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;" or (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b). A motion for relief from judgment must be "made within a reasonable time" and "no more than a year after the entry of the judgment or order[.]" Fed. R. Civ. P. 60(c). Rule 60(b) motions are left to the sound discretion of the trial court, consistent with accepted legal principles applied in light of all relevant circumstances. *Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988).

Petitioner moves under Rule 60(b)(2), asserting that the recent COVID-19 outbreak within ECCF constitutes newly discovered evidence. (DE 18-1 at 1.) To succeed on a motion for relief from judgment under Rule 60(b)(2), the moving party must demonstrate "that the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through

the exercise of reasonably diligence and (3) would probably have changed the outcome of the trial." *In re Flonase Antitrust Litig.*, 879 F.3d 61, 70 (3d Cir. 2017) (quoting *Compass Tech., Inc. v. Tseng Labs.*, 71 F.3d 1125, 1130 (3d Cir. 1995)). Importantly, "the term 'newly discovered evidence' refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.'" *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 830 F. App'x 393, 396 (3d Cir. 2020) (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).

In the alternative, Petitioner also asserts that relief under Rule 60(b)(6) would apply because the COVID-19 outbreak at ECCF is an extraordinary circumstance that justifies relief. (DE 29 at 1–2.) The standard for granting relief under Rule 60(b)(6) is a high one. Relief under this section is warranted "only in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Millhouse v. Warden Lewisburg USP*, --- F.3d. ---, No. 20-1048, 2020 WL 7238413, at *2 (3d Cir. Dec. 9, 2020) (quoting *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015)); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535–36 (2005). The moving party bears the burden of establishing such extraordinary circumstances exist. *Hanna v. Sec'y of U.S. Dep't of Agric.*, 812 F. App'x 104, 105 (3d Cir. 2020).

## IV. DISCUSSION

At the outset, I find that Petitioner's motion is properly raised under Federal Rule of Civil Procedure 60(b)(6). As Respondents point out, Federal Rule of Civil Procedure 60(b)(2) requires that the "newly discovered evidence" brought before the Court must refer to "facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 830 F. App'x at 396 (internal quotation marks omitted) (quoting *Bohus*, 950 F.2d at 930). The recent outbreak of COVID-19 cases at ECCF, which Petitioner submits as "newly discovered evidence" is not a fact that was in existence at the time the Court rendered its prior

opinion. Therefore, Petitioner's motion must fall under Rule 60(b)(6) which provides relief for any reason, so long as there are "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (internal quotation marks omitted) (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)).

In his motion, Petitioner argues that he is entitled to relief from the Court's prior decision denying his conditions of confinement claim because there has been an outbreak of COVID-19 at ECCF. (DE 18-1 at 1.) He argues that this outbreak demonstrates that the facility's safety protocols are insufficient. (DE 29 at 2–4.) And, given his underlying medical conditions, Petitioner contends it is unconstitutional to detain him under such circumstances. (*Id.*) Petitioner urges the Court to release him from custody and asserts that any concerns Respondents may have about his release may be adequately addressed by conditions such as ankle or telephonic monitoring. (*Id.* at 4–5.)

Respondents argue, however, that Petitioner has failed to meet the standard for relief under Rule 60(b)(6). (DE 27 at 3.) While Respondents recognize that the COVID-19 pandemic is ongoing, they maintain that ECCF continues to take significant responsive measures to minimize and contain infection. (DE 27 at 6.) They contend that elimination of any risk of COVID-19 is not the constitutional standard. (*Id.* at 6.) They also submit that Petitioner's medical records demonstrate that he continues to be treated regularly for his health conditions, which remain "under control." (*Id.* at 8.) Significantly, Respondents emphasize their interest in Petitioner's physical detention, especially since Petitioner has continuously failed to comply with ICE's efforts to remove him, and they urge the Court not to "approve of Petitioner's violation of the law." (*Id.* at 5–6.)

In my prior opinion denying Petitioner's habeas, I found that Petitioner's conditions of confinement did not amount to punishment. (DE 16 at 18.) I based this decision on the totality of

the circumstances, including Petitioner's health, the efforts of ECCF to prevent infection, and Respondents' legitimate interest in Petitioner's continued detention. (*Id.* at 12–18.) I also considered the fact that there had not been any new cases of COVID-19 among ICE detainees, county inmates, or correctional staff for the preceding few weeks. (*Id.* at 17.) That final consideration now appears to have changed. There have been numerous new cases of COVID-19 among ICE detainees, county inmates, and correctional staff since my September 24, 2020 decision. This trend of increased cases is not unique to ECCF; it is occurring across the country. *See* Ctrs. for Disease Control and Prevention, *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited December 31, 2020). Indeed, since September 2020, cases of COVID-19 have increased by at least 700% in New Jersey alone. *See id.*

In the wake of this uptick in cases, ECCF has tightened its protocols to protect inmates, detainees, and staff. In response to the recent outbreak, they have provided all detainees with surgical masks, they now conduct regular testing (every two weeks) of employees and vendors, and they quarantine incoming inmates and detainees for 14 days before releasing them into the general population. Notably, as soon as it was discovered that a detainee tested positive for COVID-19, the facility proactively tested the rest of that detainee's housing unit and placed the entire unit under quarantine as an extra precaution.

Despite these efforts, Petitioner contends there are still inadequacies in ECCF's protocols. Petitioner submits that the detainees in his dorm have still not received face masks and that he continues to observe correctional staff not wearing face masks. (DE 29-1 at 1–2.) Even if masks were provided, however, he argues this would still be insufficient because there is no requirement that detainees wear them and no indication that such a requirement would be enforced. (DE 29 at

3.) Petitioner states that he has been recently moved to the "dorms" at ECCF, where he lives with 50 other detainees in a single room. (DE 29-1 at 1.) He states that social distancing in these living quarters is "not possible" because there is not enough space. (*Id.*)

In *Hope v. Warden York Cty. Prison*, the Third Circuit recognized the need to "defer to administrators on matters of correctional facility administration 'not merely because the administrator ordinarily will ... have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government not the Judicial.'" 972 F.3d 310, 326–27 (3d Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 520 (1979)). The Third Circuit also warned of making "ideal" conditions, such as the ability to socially distance, a "*sine qua non* of constitutional detention." *Id.* at 327. The Third Circuit held that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). Such legitimate governmental objectives for detention of an immigration detainee include: "ensuring [their] appearances at removal proceedings; (2) protecting the public; and (3) managing the detention facilities." *Id.* at 327.

Here, Respondents stress the importance of these governmental objectives, especially when it comes to this Petitioner. Petitioner has twice been released on bond by an immigration judge and on both occasions was re-incarcerated based on arrests for new offenses. (DE 9-7 at 3; DE 9-10 at 4.) Moreover, he refuses to cooperate with ICE's efforts to remove him. Petitioner states that this is because he is afraid to return to Brazil and afraid to travel during the COVID-19 pandemic. (DE 29-1 at 2.) He suggests that Respondents' legitimate objectives can be addressed by measures short of detention, such as ankle monitoring, telephonic monitoring, or required check-ins. (DE 29 at 4–

5.) However, the existence of alternatives does not establish Petitioner's physical detention is not rationally related to a legitimate government interest. *Hope*, 972 F.3d at 328–29. "In fact, Congress has deemed the detention of [certain] aliens so important that it is required by statute." *Id.* at 329. Indeed, Petitioner here is subject to ICE's mandatory detention authority under 8 U.S.C. § 1231(a). Moreover, Respondents are experiencing difficulty obtaining Petitioner's cooperation even in a custodial setting, and it seems unlikely that his cooperation will improve as a result of release. (DE 27-1 at 6.) Even after Petitioner was informed that his non-compliance may result in criminal charges being brought against him, he has still failed to cooperate. (DE 27-1 at 6 (Notice of Failure to Comply dated November 27, 2020); DE 27-1 at 2 (stating that Petitioner refused to speak with the Consulate of Brazil on December 3, 2020).)

I do not suggest that his failure to cooperate requires denial of this application *per se*. I consider, as I must, the totality of the circumstances, especially with regard to Petitioner's health. *See Hope*, 972 F.3d at 326 (stating that courts should consider the "totality of the circumstances of confinement"). Petitioner's medical conditions remains unchanged. He continues to suffer from COPD, moderate asthma, and obesity. (DE 28-1 at 6.) Yet his most recent medical records indicate, as Respondents suggest, that he is receiving regular treatment for his conditions and that they are being managed. (*See generally* 28-1; *see also* DE 28-7.) As of recently, it appears his vitals are also being checked daily. (DE 28-1 at 1–5.)

Based upon the foregoing, I do not find that Petitioner has demonstrated he is entitled to relief from judgment under Federal Rule of Civil Procedure 60(b)(6). ECCF continues to adapt their safety protocols to try and contain COVID-19 and prevent further infection. They have enacted proactive measures such as testing employees for COVID-19 every two weeks, quarantining all incoming detainees for 14-days as a precautionary measure, and promptly testing

entire dorms if any detainee tests positive for COVID-19. Furthermore, Respondents' have a substantial and justifiable interest in this Petitioner's detention, especially given his abuse of his two prior releases on bail, and his lack of compliance with Respondents' efforts to remove him. Petitioner is receiving care and treatment for his health conditions. Simply put, there is no evidence that Petitioner's conditions of confinement are intended to punish him, and his conditions of confinement are not unconstitutional. *Hope*, 972 F.3d at 326. As a result, Petitioner has not demonstrated that extraordinary circumstances exist to warrant his release. His motion is denied.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's Motion for Relief from Judgment (DE 18) is denied. An appropriate order follows.

DATED: December 31, 2020

/s/ Kevin McNulty

_____
KEVIN MCNULTY
United States District Judge